# 21-1782-cr

IN THE

**United States Court of Appeals**

FOR THE SECOND CIRCUIT

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

BRANDEN DAVIS,

*Defendant - Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

**BRIEF FOR DEFENDANT-APPELLANT
BRANDEN DAVIS**

**TIMOTHY P. MURPHY**
Federal Public Defender's Office
Western District of New York
300 Pearl Street, Suite 200
Buffalo, New York 14202
Telephone: (716) 551-3341
*Attorney for Defendant-Appellant
Branden Davis*

# TABLE OF CONTENTS

Table of Authorities.................................................................. iii

Jurisdictional Statement.............................................................1

Issues ....................................................................................1

Procedural History and Background ...........................................2

Summary of Argument...............................................................5

Argument.................................................................................6

   I.   The sentence was both procedurally and substantively
       unreasonable, as the District Court more than doubled the
       maximum prison term contemplated in the plea agreement,
       primarily relying on vague reports of local gun violence
       committed by third parties subsequent to the offense conduct..6

      A. Standards of Review ............................................................6

      B. The sentence was procedurally unreasonable as the District
         Court failed to adequately explain its reasons for imposing a
         prison term far-exceeding the agreed upon maximum
         Guidelines range .................................................................10

      C. The sentence was substantively unreasonable as the District
         Court more than doubled the agreed upon maximum term
         predominantly based on vague references to local gun
         violence ..............................................................................12

         1.  *The purported gun violence in Rochester was afforded too
            much weight* .................................................................13

         2.  *The District Court's rejection of the reckless endangerment
            enhancement undercuts its purported basis for doubling the
            expected maximum term*.................................................22

Conclusion ............................................................................24

i

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS.................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*, 552 U.S. 38 (2007) ...........................................7, 9, 11, 14

*Rita v. United States*, 551 U.S. 338 (2007) ............................................................ 7

*United States v. Booker*, 543 U.S. 220 (2005)....................................................... 6

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008)............................passim

*United States v. Ceasar*, 10 F.4th 66 (2d Cir. 2021)....................................8, 15

*United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) ....................................... 7

*United States v. Fuller*, 426 F.3d 556 (2d Cir. 2005)......................................... 8

*United States v. Jones*, 531 F.3d 163 (2nd Cir. 2008)....................................7, 9

*United States v. Milne*, 771 Fed. Appx. 32 (2d Cir. 2019)............................. 7

*United States v. Mumuni*, 946 F.3d 97 (2d Cir. 2019)..................................... 8

*United States v. Park*, 758 F.3d 193 (2d Cir. 2014) ......................................8, 9

*United States v. Singh*, 877 F.3d 107 (2d Cir. 2017)...................................... 22

*United States v. Valente*, 915 F.3d 916 (2d Cir. 2019).................................... 9

**Statutes**

18 U.S.C. § 922(g)(1)........................................................................................... 2

18 U.S.C. § 924(a)(2)............................................................................................ 2

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3553(1) .................................................................................... 6

18 U.S.C. § 3553(a) ............................................................................ passim

18 U.S.C. § 3553(a)(1) ............................................................................ 21

18 U.S.C. § 3553(a)(2) .......................................................................... 5, 13

18 U.S.C. § 3553(a)(2)(A) ................................................................13, 15, 21

18 U.S.C. § 3553(a)(2)(B) .................................................................... 16, 23

18 U.S.C. § 3553(a)(2)(C)) .................................................................. 15, 23

18 U.S.C. § 3553(c) .............................................................................. 5, 10

18 U.S.C. § 3553(c)(2) .......................................................................... 2, 10

18 U.S.C. § 3661 .................................................................................... 14

18 U.S.C. § 3742(a) .................................................................................. 1

28 U.S.C. § 1291 ...................................................................................... 1

**Other Authorities**

Edward J. Devitt, *Ten Commandments for the New Judge*, 65 A.B.A. J.
574 (1979), *reprinted in* 82 F.R.D. 209, 209 (1979)...................................... 21

Nagin, Daniel S., "Criminal Deterrence Research at the Outset of the
Twenty-First Century," *Crime and Justice*, vol. 23, [University of Chicago
Press, University of Chicago], 1998, available at:
http://www.jstor.org/stable/1147539 ........................................................ 16

Paternoster, Raymond, "How Much Do We Really Know about Criminal
   Deterrence?," 100 J. Crim. L & Criminology 765 (2010) (Vol. 100, Issue 3,
   Article 6), available at:
   https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?artic
   le=7363&context=jclc .................................................................................... 16

Stenman, Don, "The Prison Paradox: More Incarceration Will Not Make
   Us Safer," *Vera Institute of Justice*, published July 2017, available at:
   https://www.vera.org/downloads/publications/for-the-record-prison-
   paradox_02.pdf ............................................................................................. 18

**Sentencing Guidelines**

U.S.S.G. §3C1.2 ............................................................................................. 4, 23

**New York Penal Law**

N.Y. Penal Law § 30.00(1) ............................................................................ 21

**Jurisdictional Statement**

   Appellant Branden L. Davis was charged in a criminal complaint on September 15, 2020 with a single firearm possession count, which triggered the subject matter jurisdiction of the United States District Court for the Western District of New York pursuant to 18 U.S.C. § 3231. A 2.[1]

  Mr. Davis waived indictment and pleaded guilty on March 1, 2021. He was sentenced on July 7, 2021. A 8-10, 26, 37-38, 87. Judgment was entered on July 9, 2021. A 93-99. A timely notice of appeal was filed on July 21, 2021. A 100.  This Court enjoys jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

**Issues**

  **1.** Was the sentence procedurally unreasonable, as the District Court failed to adequately explain its reasons pursuant to 18 U.S.C.

---

[1] Materials in the Joint Appendix will be cited as "A __ ." The April 27, 2021 presentence investigation report (filed contemporaneously under seal) will be cited as "PSR __ ."  The July 8, 2021 Statement of Reasons form (also filed contemporaneously under seal) will be cited as "SOR _."

§3553(c)(2) for dramatically increasing Mr. Davis's expected sentence, as the court predominantly relied on the anecdotal local media reports of third parties committing crimes as a basis to more than double the prison term beyond the agreed-upon maximum Guidelines range?

2. In a case where no injuries occurred, was the sentence substantively unreasonable, as the District Court failed to afford the 18 U.S.C. § 3553(a) factors their due consideration, but instead more than doubled Mr. Davis's expected maximum prison term so the court could *send a message* regarding recent purported gun violence in the City of Rochester?

## Procedural History and Background

Mr. Davis was charged in the Western District of New York in a one-count information, alleging he was a felon-in-possession of a firearm, having been previously convicted of an offense punishable by a term of more than a year. *See*, 18 U.S.C. §§ 922(g)(1), 924(a)(2); A 30-31, 37-38. It was alleged that on August 6, 2020, Mr. Davis exited his vehicle at the beginning of a traffic stop, ran from the Rochester Police and discarded a loaded firearm during the pursuit. The police promptly

recovered the weapon, which was not used in furtherance of another crime. There were no injuries. A 28-20, 77; PSR at pp. 5-6**.**

Mr. Davis waived indictment and pleaded guilty on March 1, 2021, to the lone count in the information. A 26-27, 36-40.  The written plea agreement included an appeal waiver provision encompassing any prison sentence not exceeding twenty-four (24) months. A 35-36, 43.[2]

At Mr. Davis's July 7, 2021 sentencing, the District Court stated this:

> With a total offense level of 12 and a criminal history category III, the sentencing range under the guidelines is 15 to 21 months. Now, the Court did not enhance this matter based upon the reckless endangerment. Based upon the facts of this case, I don't believe that two level enhancement applied. However, I do believe that the sentencing range in this particular case, 15 to 21 months, is not adequate to address the seriousness of the offense here or your criminal history.
>
> And also I think deterrence is now probably even stronger than it was in the past. You can't pick

---

[2] *See*, A 15, 17-18 (plea agreement, ¶¶ 12(b) and 20); *see also*, A 89-90 (where both the government and the court agreed at the close of sentencing that Mr. Davis retained the right to appeal his sentence).

> up the newspaper or turn on the TV in this
> community without somebody running around
> with a gun and shooting somebody. And the word
> has to get out there that if you decide to be in the
> city with a loaded gun and run around the city,
> there's consequences to that and there's serious
> consequences to that. <u>This is probably very bad
> timing for you. I agree with your attorney that
> this occurred probably prior to this spike in
> violence in the city</u>, but I think we have to be
> very, very serious and send a very clear message
> that it's not going to be tolerated. The guns on
> the street, carrying loaded weapons on the street
> cannot be tolerated. So this sentence and your
> particular fact situation has to also be <u>a
> deterrent to you and to the community that this
> is not going to be tolerated</u>. Based upon that it's
> the sentence of the Court that the defendant…
> be sentenced to 48 months to the Bureau of
> Prisons…

A 86-87 (emphasis added); *see also*, A 82-85.

As can be seen above, despite the government unsuccessfully

seeking a two-level enhancement under U.S.S.G. §3C1.2 for reckless

endangerment during flight, A 64-69, 86, Mr. Davis was sentenced to

forty-eight (48) months in prison - - more than doubling the maximum

term contemplated in the plea agreement. A 15, 87, 94. He was also

sentenced to three (3) years of supervised release. A 87-88.

## Summary of Argument

Defendants should be punished based on their own culpable conduct, receiving a sentence that is sufficient but no greater than necessary to achieve the goals of 18 U.S.C. § 3553(a)(2).

Mr. Davis's sentence was procedurally unreasonable, as the District Court failed to adequately explain its sentence pursuant to 18 U.S.C. § 3553(c). Rather, the court's reasons for more than doubling the maximum term permitted under the plea agreement focused on fleeting references to purported news accounts of rising local gun violence committed by nameless third parties well after the offense conduct.

Further, the sentence was also substantively unreasonable, as the District Court failed to afford the 18 U.S.C. § 3553(a) factors their due consideration. Instead, Mr. Davis's sentence was drastically increased above the contemplated Guidelines and plea agreement range, as the District Court seemed to be merely reacting to purported news accounts of recent gun violence in Rochester.

## Argument

**I.  The sentence was both procedurally and substantively unreasonable, as the District Court more than doubled the maximum prison term contemplated in the plea agreement, primarily relying on vague reports of local gun violence committed by third parties subsequent to the offense conduct.**

The District Court more than doubled Mr. Davis's sentence based on the purported conduct of others.  The court's reasoning is gravely undercut by its recognition of there being insufficient evidence to support a sentencing enhancement for reckless endangerment during Mr. Davis's flight from the police.  Indeed, the District Court afforded disproportionate weight to media reports of local violence occurring subsequent to the offense conduct, at the expense of pertinent 18 U.S.C. § 3553(1) factors.

### A. Standards of Review

Though the Guidelines are only advisory, *United States v. Booker*, 543 U.S. 220, 226-227 (2005), District Courts are still required to properly calculate and consider the Guidelines range.  In keeping with the parsimony clause mandate of 18 U.S.C. § 3553(a) to impose a

sentence that is sufficient but no greater than necessary, a sentencing court must give the Guidelines fair and reasonable consideration, *United States v. Jones*, 531 F.3d 163, 170 (2nd Cir. 2008); *accord*, *United States v. Milne*, 771 Fed. Appx. 32, 34-35 (2d Cir. 2019), as the Guidelines are "a starting point and an initial benchmark" for imposing a reasonable sentence. *See, Gall v. United States*, 552 U.S. 38, 49-51 (2007); *Rita v. United States*, 551 U.S. 338, 347-351 (2007).

Appellate review of reasonableness involves two steps: first, the Court must determine whether the sentencing judge committed any procedural errors; and second, the Court must assess whether the length of the sentence is substantively reasonable under the totality of the circumstances. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) *(en banc)*; *Jones*, 531 F.3d at 170, citing *Gall*, 552 U.S. at 50-51 (other citations omitted). In the process, § 3553(a) factors must be given due consideration, and the court must provide its sentencing reasons on the record in order to facilitate a proper review. *Rita*, 551 U.S. at 356; *United States v. Dorvee*, 616 F.3d 174, 179, 182-183 (2d Cir. 2010).

Procedural unreasonableness includes failing to provide an adequate explanation for a sentencing decision. *Cavera*, 550 F.3d at 190.

Appellate review of sentencing decisions, even those outside the Guidelines range, is conducted under a "deferential abuse of discretion standard." *Cavera*, 550 F.3d at 189. But while District Courts have broad discretion at sentencing, it is not unlimited. *United States v. Mumuni*, 946 F.3d 97, 106 (2d Cir. 2019). Indeed, there is no presumption of reasonableness in a sentence, even if it falls within a Guidelines range. *Cavera*, 550 F.3d at 189. This standard encompasses a District Court's determination for an upward departure. *See*, *e.g.*, *United States v. Fuller*, 426 F.3d 556, 562 (2d Cir. 2005).

Substantive reasonableness is judged in light of the factors listed in 18 U.S.C. § 3553(a). *See generally*, *United States v. Park*, 758 F.3d 193, 200 (2d Cir. 2014) (further recognizing that substantive unreasonableness may include a District Court's clearly erroneous assessment of the evidence); *United States v. Ceasar*, 10 F.4th 66, 79 (2d Cir. 2021) (recognizing "[r]eview for "substantive reasonableness . . . requires that [this Court] consider only whether the length of the

8

sentence is reasonable in light of the § 3553(a) factors" (internal citation omitted)). This Court's duty "is not to identify the 'right' sentence but, giving due deference to the district court's exercise of judgment, to determine whether the sentence imposed falls within the broad range that can be considered reasonable under the totality of the circumstances." *Jones*, 531 F.3d at 174; *see also*, *Gall*, 552 U.S. at 51.

This Court has recognized a substantively unreasonable sentence as including: "(1) … a sentence [that] lacks a proper basis in the record, (2) … a trial judge's assessment of the evidence leave[ing] the reviewing court with a definite and firm conviction that a mistake has been committed, or (3) [where] the reviewing court… reache[s] the informed judgment that a sentence is otherwise unsupportable as a matter of law." *Park*, 758 F.3d at 200-201; *Cavera*, 550 F.3d at 204 (citation omitted); *United States v. Valente*, 915 F.3d 916, 921 (2d Cir. 2019).

9

**B. The sentence was procedurally unreasonable as the District Court failed to adequately explain its reasons for imposing a prison term far-exceeding the agreed upon maximum Guidelines range**

The District Court failed to adequately explain the reasons for its drastic increase in prison time.

Under 18 U.S.C. § 3553(c), a sentencing court "shall state in open court the reasons for its imposition of the particular sentence…" Further, if the sentence is outside the Guidelines range, the court must provide "the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form…" 18 U.S.C. § 3553(c)(2); *see again*, *Cavera*, 550 F.3d at 190 (recognizing that "a district court errs if it fails adequately to explain its chosen sentence, and must include "an explanation for any deviation from the Guidelines range"").

As this Court has long recognized:

> District judges are, … generally free to impose sentences outside the recommended range. When they do so, however, they "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." … In this way, the district court reaches an informed and individualized judgment in each case as to what

10

is "sufficient, but not greater than necessary" to
fulfill the purposes of sentencing. 18 U.S.C. §
3553(a).

*Cavera*, 50 F.3d at 189 (emphasis added); *see also id.* at 193 ("A district

judge imposing a non-Guidelines sentence… should say why she is

doing so, bearing in mind, once again, that "a major departure [from

the Guidelines] should be supported by a more significant justification

than a minor one"), citing *Gall*, 552 U.S. at 50-52.

The surface reasons for the District Court imposing such a drastic

increase in Mr. Davis's sentence included the seriousness of his offense,

his criminal history and the purported uptick in local gun violence

(committed by others). A 86. However, none of these reasons are

adequately explained at sentencing. To begin with, the court spends no

time substantively analyzing why either the present offense or Mr.

Davis's history moved the court so forcefully in this direction. A 86. For

instance, while the court describes the unspecified amount of

marijuana and sandwich baggies found in the discarded bag as "just as

concerning" as his possessing a weapon, A 84, no charges were ever

filed regarding these items, none of which were even referenced in the

six-page affidavit in support of the September 15, 2020 Complaint. *See*,

11

*United States v. Davis*, WDNY Dock. No. 6:21-cr-06002, Dkt. 1, at ¶¶ 4 and 6.

Moreover, the quick reference to local gun violence doesn't even approach an objective and verifiable basis. Despite media accounts of local crime being notoriously unreliable, the District Court's reasoning in its SOR form was simply that it "found this sentence was sufficient but not greater than necessary to comply with the purposes of sentencing." This hardly provides an adequate explanation for more than doubling an expected sentence where no extenuating circumstances are apparent in the record.

**C. The sentence was substantively unreasonable as the District Court more than doubled the agreed upon maximum term predominantly based on vague references to local gun violence**

Substantive unreasonableness is demonstrated in our matter by at least two components of the District Court's approach. First, the court disproportionately relied on anecdotal information in doubling Mr. Davis's expected sentence. Secondly, the court's rejection of the requested endangerment enhancement directly contradicted its

ostensibly frantic public safety concerns that *Mr. Davis's* conduct had

direct implications for the community at large.

    1. *The purported gun violence in Rochester was*
       *afforded too much weight*

Though silent on this topic in its pre-sentence pleadings, A 45-51,

the government raised with the District Court the purported recent

spike in gun violence in the City of Rochester. A 76. As defense counsel

observed, however, Mr. Davis's crime *occurred more than a year before*

the purported "recent spike" began. A 78. Neither the government nor

the court disputed this fact. There was further no dispute below that

this purported gun violence was carried out by other people. A 78.

Considering circumstances occurring subsequent to the offense

conduct flies in the face of imposing a sentence that is sufficient but no

greater than necessary to achieve the otherwise legitimate goals of §

3553(a)(2). A defendant receiving a *doubled* prison sentence based on

the purported conduct of others - - occurring after the charged conduct -

- cannot reasonably promote respect for the law. 18 U.S.C. §

3553(a)(2)(A). Rather, it is more likely to breed mistrust and cynicism,

13

as the sentence here seemed more of an emotional reaction to patently generic events in the news.

What's the point of the defense and the government submitting case-specific pleadings to carefully cultivate their positions, including probation report objections and sentencing statements (*e.g.*, A 45-62) when the judge may end up picking up a newspaper on the morning of sentencing and change the entire dynamic? In such a scenario, the concept of a fair and individualized sentencing, confined to the contours of 18 U.S.C. § 3553(a), has been vanquished.

While there is "[n]o limitation... placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court... may receive and consider for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3661, this Court has recognized that:

> [r]eviewing a sentence for substantive reasonableness requires us to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. While a sentence outside the Guidelines range is not presumptively unreasonable, the district court's justification for a non-Guidelines sentence must be "sufficiently compelling to support the degree of the variance." *Id.* at 50. And "a major

14

> departure should be supported by a more
> significant justification than a minor one." *Id.*

*Ceasar*, 10 F.4th at 79. At bar, the District Court's justification *(that he read about gun violence in the newspaper)* was not sufficiently compelling to support the imposed variance from the agreed-upon Guidelines range.

Mr. Davis's sentence directly violated the parsimony clause. In the context of purportedly protecting the public from Mr. Davis (under § 3553(a)(2)(C)), the prison term was more than doubled, based not on the appellant's dangerousness, but on that of *others*. The same goes for the seriousness of the offense under § 3553(a)(2)(A), as "the offense" encompasses the circumstances of *this* case (*i.e.*, the events occurring on August 6, 2020), not of other people's cases which are vaguely and anecdotally referenced in passing. As argued by defense counsel, the seriousness of the offense conduct was more reasonably addressed through the 15 to 21-month range contemplated in the plea agreement. A 79.

According to the District Court, deterrence was a stronger factor because of the media accounts of local shootings. A 86. Word just had to get out that there are consequences to carrying a gun. *Id.* But an

15

individualized sentence requires something more. Indeed, the court more than doubling Mr. Davis's maximum range did nothing to further the principal of deterrence. *See*, § 3553(a)(2)(B). To the contrary, deterrence is more likely to be impacted by one's perceived likelihood of being caught rather than the ultimate threatened penalty to be imposed.[3]

But even if individuals *were* indeed motivated by a potential harsher sentence, why conform one's future actions to a certain mode of behavior when you're not being sentenced in proportion to your *own* criminal conduct? Put another way, what's the point of restraining

---

[3] *See generally*, Nagin, Daniel S., "Criminal Deterrence Research at the Outset of the Twenty-First Century," *Crime and Justice*, vol. 23, [University of Chicago Press, University of Chicago], 1998, pp. 1–42, available at: http://www.jstor.org/stable/1147539 (last accessed, Oct. 22, 2021); *see also*, Paternoster, Raymond, "How Much Do We Really Know about Criminal Deterrence?," 100 J. Crim. L & Criminology 765 (2010) (Vol. 100, Issue 3, Article 6, pp. 765-824) (observing at p. 766 that "[i]n spite of its central importance, and the very high expectation we have that legal punishment and criminal justice policies can inhibit crime, we do not have very solid and credible empirical evidence that deterrence through the imposition of criminal sanctions works very well"), available at: https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7363&context=jclc (last accessed, Oct. 22, 2021).

one's own actions when punishment may be increased depending on how stories of local crimes are presented in the newspaper on the morning of sentencing? And with no objective and verifiable crime data being relied upon by the court, the situation is made even more unpredictable.

Though the District Court officially referenced the § 3553(a) sentencing goals of respect for the law, being no greater than necessary and deterrence, A 85-86, the court affirmatively stating the local gun violence was "bad timing" for Mr. Davis, A 86-87, wipes out all formal statutory gestures spoken for the sake of making a record. Would the same logic apply for a sex crime defendant if there had been a recent increase in sex offenses in the area? The only information impacting a defendant's sentence should: (1) occur prior to the offense conduct so the defendant may conform his or her own behavior accordingly, (2) be objective and verifiable, and (3) be the result of the defendant's own actions, not the conduct of others.

"Bad timing" for Mr. Davis, A 86-87, means inappropriate timing and without notice. The District Court's statements reveal the arbitrariness of doubling a defendant's sentence based on the

17

purported conduct of non-litigants to the case, only referenced in news reports. The court felt it had to send a clear message: guns on the street would not be tolerated. A 86-87.  In doing so, however, Mr. Davis's particular case became almost irrelevant to the court's agenda.

In fact, the District Court was obliged to weigh Mr. Davis's personal history in light of the other pertinent § 3553(a) factors.

Rochester native Branden L. Davis was 35 years old at the time of his plea and sentencing. A 24, 72; PSR at p. 2 and ¶ 85. Speaking on his own behalf, Mr. Davis explained to the court that he had recently discussed with his family how he could help young people. He expressed remorse.  His previous 70-month prison sentence, imposed when he was 18, in fact hurt him. A 79-80. As counsel opined, Mr. Davis's prior incarceration likely did more harm than good. A 78-79. It is no secret that overly harsh sentences contribute to a cycle of incarceration, providing only limited benefits.[4]

---

[4] *See generally*, Stenman, Don, "The Prison Paradox: More Incarceration Will Not Make Us Safer," *Vera Institute of Justice*, published July 2017, pp. 1-2 (observing that "[t]here is a very weak relationship between higher incarceration rates and lower crime rates. Although studies differ somewhat, most of the literature shows that between 1980 and 2000, each 10 percent increase in incarceration rates was associated with just a 2 to 4 percent lower

Branden was now a grandfather and wanted to be with his family, including his four children. Mr. Davis's father was convicted of robbery when Branden was just six years of age. Accordingly, he was raised by his grandmother, who was 92 at the time of sentencing. A 79-80, 84; *see also*, PSR at ¶¶ 85-86.

The District Court did not afford sufficient weight to Mr. Davis's potential for being a productive member of society. It was not disputed below that Branden completed many rehabilitative program hours while in prison, including OSHA Safety and computer classes. While in custody, he also secured his GED (in 2006). *See*, A 78, 81; PSR at ¶ 95[5] and pp. 11-12 (noting appellant's participation in 560 hours of in-custody programming),[6] p. 61. Moreover, Mr. Davis's employment

---

crime rate."), available at: https://www.vera.org/downloads/publications/for-the-record-prison-paradox_02.pdf (last accessed, Oct. 26, 2021).

[5] Page 2 of the PSR inaccurately states that Mr. Davis had not obtained his GED.

[6] The PSR revealed this programing also included health services training, interviewing and employment skills, typing classes, personal finance, as well as Internet and computing. *See*, PSR at pp. 11-12. Further, during Mr. Davis's time at the Buffalo Half Way House following his release from custody in 2013, he participated in an array of programs addressing transitional skills, employment and

history included his working at a barbershop, as well as at a muffler shop. His OSHA certification obtained in prison will help him pursue roofing positions as well. A 84; PSR ¶ 97.

At the time of sentencing, Mr. Davis was officially in state custody awaiting an expected two-year prison sentence relative to a recent drug conviction. A 77-78, 81-82. Mr. Davis had six prior misdemeanors, just one triggering criminal history points. While the District Court counted three prior felonies, these were in substance just two criminal events. A 82-84; PSR at pp. 8-16 and ¶¶ 50-51, 55 and 60. Moreover, between 2010 and 2019, when Mr. Davis was convicted in state court of drug possession, his violations of the law were predominantly driver's license-related. PSR ¶¶ 56-60; *see also*, A 85. Indeed, other than his 2004 gun possession case, Mr. Davis had no criminal dispositions involving any sort of violence following his misdemeanor (attempted assault) youthful offender adjudication back when he was 16 years of age, A 77; PSR ¶¶ 48-60, an act that would

---

job readiness, family and parenting, money management and vocational life skills. *Id*. at 12.

not even be deemed criminal in New York today (committed by someone under 18). *See*, N.Y. Penal Law § 30.00(1).

In sum, the District Court failed to properly consider the "nature and circumstances of the offense," as well as Mr. Davis's "history and characteristics," as mandated by 18 U.S.C. § 3553(a)(1). Such information was integral for the District Court to achieve the goal of imposing a "just punishment."  18 U.S.C. § 3553(a)(2)(A). As this Court has recognized:

> "Sentencing, that is to say punishment, is perhaps the most difficult task of a trial court judge." While there are many competing considerations in every sentencing decision, a sentencing judge must have some understanding of "the diverse frailties of humankind."  In deciding what sentence will be "sufficient, but not greater than necessary" to further the goals of punishment, 18 U.S.C. § 3553(a), a sentencing judge must have a "generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain." … *see also* Edward J. Devitt, *Ten Commandments for the New Judge*, 65 A.B.A. J. 574 (1979), *reprinted in* 82 F.R.D. 209, 209 (1979) ("Be kind. If we judges could possess but one attribute, it should be a kind and understanding heart. The bench is no place for cruel or callous people regardless of their other qualities and abilities. There is no burden more onerous than imposing sentence in criminal cases.").

*United States v. Singh*, 877 F.3d 107, 121 (2d Cir. 2017) (other internal citations omitted).

> 2. *The District Court's rejection of the reckless endangerment enhancement undercuts its purported basis for doubling the expected maximum term*

The District Court's anecdotal findings were inherently inconsistent. Despite finding legally insufficient evidence to support a reckless endangerment enhancement, the court indicated the expected Guidelines range was inadequate to address the seriousness of the offense and Mr. Davis's history. A 86. But doubling a potential sentencing range without at least some extenuating circumstances raises a red flag, particularly in light of the court's rationale in denying the enhancement:

> I've had a chance to review the cases as well as the facts in this particular case, and I agree with the defense here that the two level enhancement should not apply. It was clearly a dangerous situation, but I do not believe it rises to the level of reckless endangerment in which a two level increase should apply for reckless endangerment during flight in this case based upon several factors: The fact that the gun was in a bag; was dropped by the defendant; was found very quickly by the police; this was a late evening

> incident in which no civilians were anywhere
> near the area which would create an extremely
> dangerous situation. I believe the Second Circuit
> has been very clear that it should pose an
> imminent and immediate threat. I do not see
> that under the facts of this case and, therefore,
> the two level enhancement will not apply.

A 68-69 (emphasis added). Indeed, the court denying the government's

U.S.S.G. §3C1.2 proposal "based on the facts of this case," A 86, reveals

the public faced no further danger beyond the concerns which

warranted the agreed-upon 15 to 21-month Guidelines range.

The concept of general deterrence (under § 3553(a)(2)(B)) is a thin

reed that does not support a sentence double the recommended

Guidelines range. So too for the sentencing factor of protecting against

local gun violence (under § 3553(a)(2)(C)) which, as explained by the

District Court, cannot "bear the weight assigned it under the totality of

circumstances in the case." *Cavera*, 550 F.3d at 191.

The District Court finished up its reprimand of Mr. Davis this

way:

> Mr. Davis, I hope you go back to the jail and you
> see these young people you talked about and tell
> them there's consequences to carrying guns in
> this community, okay? Let them learn a lesson.

A 91 (emphasis added). But what's the lesson here? Mr. Davis accepted a guilty plea based on an acknowledgement of his *own* wrong doing, A 37-38, but then was sentenced based on *other's* misconduct. How should the young people at the jail now govern their behavior?

Indeed, the sentence cannot be justified on this record and the only appropriate remedy is to vacate for resentencing.

## Conclusion

This Court should vacate the judgment and remand with instructions for the District Court to resentence Mr. Davis while affording the 18 U.S.C. § 3553(a) factors their due weight.

Dated:    November 12, 2021
          Buffalo, New York

                        Respectfully submitted,

                        **/s/ Timothy P. Murphy**
                        Timothy P. Murphy
                        Federal Public Defender's Office
                        Western District of New York
                        300 Pearl Street, Suite 200
                        Buffalo, New York 14202
                        Telephone: (716) 551-3341

24

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

UNITED STATES OF AMERICA,　　　　　　　　**21-1782-cr**

        Appellee,

    v.

BRANDEN DAVIS,

    Defendant - Appellant,

       Defendant-Appellant.

_____


1.　　This brief complies with the type-volume limitation of

Fed.R.App.P.32(a)(7)(B) because:

■　　this brief contains 4,265 words, excluding the parts of the brief exempted by Fed.R. App.P. 32(a)(7)(B)(iii), *or*

☐　　this brief uses a monospaced typeface and contains [*state the number of* ] lines of text, excluding the parts of the brief exempted by Fed.R.App.P.32(a) (7)(B)(iii).

2.      This brief complies with the typeface requirements of

Fed.R.App.P.32(a)(5)and the type style requirements of Fed.R. App.P.

32(a)(6)because:

- ■      this brief has been prepared in a proportionally spaced
       typeface using Century Schoolbook in size 14 font,

           *or*

- ☐      this brief has been prepared in a monospaced typeface using
       Microsoft Word 2013 with _____.

Dated:      November 12, 2021
           Buffalo, New York


           Respectfully submitted,


           **/s/ Timothy P. Murphy**
           Timothy P. Murphy
           Federal Public Defender's Office
           Western District of New York
           300 Pearl Street, Suite 200
           Buffalo, New York 14202
           Telephone: (716) 551-3341

26